IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CARL KAZANOWSKI,<br><br>Defendant. | Case No. 15-cr-00459-DKW-5<br><br>**ORDER DENYING DEFENDANT'S EMERGENCY REQUEST FOR A SENTENCE REDUCTION** |

Pursuant to 18 U.S.C. § 3582(c)(1), inmate Carl Kazanowski filed an "Emergency Request for a Sentence Reduction," Dkt. No. 249, arguing that his various medical conditions and "the growing COVID-19 pandemic" constitute "extraordinary and compelling" reasons to warrant reducing his 120-month sentence or placing him on home confinement. *See id.*; Dkt. No. 255 at 4.

Kazanowski, however, has not shown that "extraordinary and compelling" circumstances exist because his health conditions do not put him at a high risk of becoming seriously ill if he contracts the virus, and there are no positive COVID-19 cases at the facility where Kazanowski is housed. And even if that were not the case, the Court cannot grant Kazanowski the relief he seeks because he poses "a danger

to the safety of . . . the community" and the sentencing factors do not militate in his favor.[1]  Accordingly, Kazanowski's motion is DENIED.

## FACTUAL & PROCEDURAL BACKGROUND

### A.  Relevant Factual Background

Between October 2013 and March 2015, Kazanowski was one of five individuals involved in a methamphetamine distribution enterprise.  Dkt. No. 149 at 4–6; Dkt. No. 177, ¶¶ 8–27.  As Kazanowski later admitted, he was arrested after having delivered approximately 273.75 grams of 99% pure methamphetamine.  Dkt. No. 149, ¶ 8(d).  In the eight-count indictment against Kazanowski and his four co-conspirators, Kazanowski was charged in Counts I and IV.  Dkt. No. 39; Dkt. No. 149, ¶ 1.   In Count I, Kazanowski was charged with conspiracy to distribute, and possession with intent to distribute, 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  Dkt. No. 149, ¶ 1.  Count IV charged Kazanowski with possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A).  *Id.*  On December 19, 2016, Kazanowski pled guilty to Count I.   In exchange, the Government agreed to dismiss Count IV against Kazanowski and not seek an enhanced sentence under 21 U.S.C. § 851 based upon Kazanowski's prior felony conviction for possession of cocaine in Florida.  *Id.* at ¶¶ 4, 10(a)–(b).  By virtue of

---

[1]*See* 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13 cmt. n.1.

pleading guilty, Kazanowski understood that he faced a minimum term of ten years' imprisonment and five years of supervised release, with the possibility of life imprisonment; a fine of up to $10,000,000; and supervised release for up to life. *Id.* at ¶ 7; 21 U.S.C. § 841(b)(1)(A); Dkt. No. 177, ¶¶ 89–93.

After adopting the presentence investigation report (PSR) in full, Dkt. No. 211 at 1, on October 25, 2017, this Court sentenced Kazanowski to a total term of 120 months' incarceration and five years of supervised release. Dkt. Nos. 210, 211. In imposing this sentence, Kazanowski was held responsible for 257.6 grams of "ice." Dkt. No. 177, ¶¶ 33–34.

Kazanowski is 5 feet 11 inches tall and weighs 200 pounds (Body Mass Index of 27.9), and currently suffers from the following medical conditions: a "mild" case of chronic kidney disease; arthritis; high blood pressure (hypertension); enlarged prostate; spinal stenosis and cervical osteoarthritis (neck and back pain); benign neoplasm (tumors) of the major salivary glands; and major depression and bipolar disorder. *See* Dkt. No. 255-11 at 2, 4, 6, 44; *see also* Dkt. No. 177 at 2, 17–18. At the sentencing hearing, the Court allowed Kazanowski to self-surrender to a facility to be designated by the Federal Bureau of Prisons (BOP) on December 6, 2017, Dkt. No. 210 at 3, a date that was later extended to August 2, 2018 at Kazanowski's request, Dkt. No. 230.

Kazanowski is currently 61 years of age and incarcerated at Pensacola FPC,[2] a minimum-security federal prison located in Escambia County, Florida.[3]  Having served approximately 23 months of his 120-month sentence, Kazanowski is scheduled to be released on January 27, 2027.[4]

### B.  Relevant Procedural History

On May 11, 2020, Kazanowski, proceeding *pro se*, filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Dkt. No. 249.   On May 15, 2020, Assistant Federal Public Defender (AFPD) Max Mizono sent Kazanowski a letter, in which, among other things, counsel explained the compassionate release process; asked if he would like assistance; and advised him that, "if you have not already done so, initiate a request with the warden for a 'reduction in sentence.'"  Dkt. No. 255-2 at 1–2.  The record indicates AFPD Mizono became counsel of record on June 16, 2020.  Although the deadline for Kazanowski to file his reply brief had passed, the Court granted the FPD's request for an extension.  Dkt. No. 254.

On June 18, 2020, AFPD Mizono avers that he had two telephone conversations with Kazanowski, during which Kazanowski stated that he received

---

[2]*Find an Inmate*, BOP, https://www.bop.gov/inmateloc/ (last visited June 25, 2020).
[3]*FPC Pensacola*, BOP, https://www.bop.gov/locations/institutions/pen/ (last visited July 1, 2020).
[4]*Supra* n.2.

AFPD Mizono's May 15 letter and thereafter "he submitted a request for compassionate release to the warden" at Pensacola FPC. Kazanowski, however, "could not recall the exact date he submitted his request," only that it was "on or around May 21, 22, or 23, 2020." Dkt. No. 255-1, ¶ 3. According to AFPD Mizono, Kazanowski also confirmed that the BOP has not responded to his request for early release. *Id.*

Kazanowski filed his reply brief, through counsel, on June 23, 2020. Dkt. No. 255. As such, Kazanowski's motion has been fully briefed by all concerned and is now ripe for resolution.

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* 18 U.S.C. § 3583(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). Congress carved out such an exception in 18 U.S.C. Section 3582(c)(1), as amended by the First Step Act of 2018 (FSA), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).[5]  Under

---

[5] The FSA amended the *procedural requirements* under Section 3582(c)(1)(A) to permit inmates

Section 3582(c)(1), courts may "modify a term of imprisonment" where, as here, the inmate files a motion, if three requirements are satisfied:

> (1) the inmate "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion" on behalf of the inmate "or the lapse of 30 days from the receipt of such a request" by the relevant warden;
>
> (2) the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and
>
> (3) the court has "consider[ed] the factors set forth in [18 U.S.C. Section] 3553(a)" and found that the inmate is "not a danger to the safety of any other person or the community, as provided under [18 U.S.C. Section] 3142(g)."

*See* 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13 (policy statement). The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance of the evidence. *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *Walton v. Ariz.*, 497 U.S. 639, 650 (1990) (holding that a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency."), *overruled on other grounds by Ring v. Ariz.*, 536 U.S. 584, 609 (2002).

---

to directly petition courts for a sentence reduction, whereas pre-amendment, an inmate could only petition the BOP Director, who then had the discretion to move the court to reduce the inmate's sentence based upon "extraordinary and compelling reasons." *See* FSA § 603(b), 132 Stat. at 5239; U.S.S.G. § 1B1.13 cmt. n.4.; *see also United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).

## DISCUSSION

Kazanowski argues he has satisfied all three requirements for a sentence reduction under Section 3582(c)(1), as outlined above. *See* Dkt. No. 255 at 2–3, 13–15. The Government's only contention is that Kazanowski has not satisfied the administrative exhaustion requirement. Dkt. 252 at 1, 4, 18. Although the Court concludes that Kazanowski has satisfied the exhaustion requirement because 30 days have passed since the warden at Pensacola FPC apparently received Kazanowski's request for compassionate release, and the warden has not yet issued a response, a reduction in Kazanowski's sentence is not warranted because he has not carried his burden on the second and third requirements. *See* 18 U.S.C. § 3582(c)(1).

### I.    Exhaustion

On the threshold exhaustion requirement, Kazanowski avers that *after* filing his motion with this Court, he submitted a request for a sentence reduction to the warden at Pensacola FPC. Dkt. No. 255-1, ¶ 3; *cf.* Dkt. No. 249. The Government therefore contends Kazanowski has not satisfied the "mandatory" exhaustion requirement under Section 3582(c)(1)(A), and his motion should be dismissed. *See* Dkt. No. 252 at 1, 4, 8–12, 18. The Court concludes, however, that because the sworn declaration filed by Kazanowski's counsel indicates that the statutory 30-day response period passed with no response from the warden at Pensacola FPC, Dkt.

- 7 -

No. 255-1, ¶ 3, Kazanowski has exhausted his administrative relief in accordance with Section 3582(c)(1)(A).

### A.    Exhaustion is Mandatory Under Section 3582(c)(1)

Section 3582(c)(1)(A) provides, in relevant part, that a "court may not modify a term of imprisonment once it has been imposed" except:

> [U]pon motion of the defendant *after* the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such request by the warden . . ., whichever is earlier, [a court] may reduce the term of imprisonment . . .

*See* 18 U.S.C. § 3582(c)(1)(A) (emphasis added). That *statutory* language establishes a "mandatory" exhaustion requirement, similar to that in 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act (PLRA),[6] and "suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *See, e.g.*, *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) (holding that "mandatory exhaustion statutes like [Section 1997e(a) of] the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion" because unlike "judge-made exhaustion doctrines . . . amendable to judge-made exceptions," a "statutory

---

[6]42 U.S.C. Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

exhaustion provision stands on a different footing" in that "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to"); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required."), *superseded by statute on other grounds as stated in Booth*, 532 U.S. at 740–41. The coronavirus pandemic does not exempt inmates from the exhaustion requirement.[7] Therefore, although the FSA allows an inmate to directly petition a court for compassionate release, Section 3582(c)(1)(A) mandates that an inmate exhaust administrative relief before a court "may reduce the term of imprisonment."

## B.   Section 3582(c)(1)(A) Exhaustion Requirements

Under Section 3582(c)(1)(A), the first step in the exhaustion process for any

---

[7]*See, e.g.*, *United States v. Drummondo-Farias*, No. CR 12-00174(1) JMS, 2020 WL 2616119, at *2–4 & n.6 (D. Haw. May 19, 2020) (Seabright, J.) (concluding further that it is irrelevant whether exhaustion under Section 3582(c)(1)(A) is "jurisdictional," meaning it cannot be waived, or merely a "claims-processing rule" that the Government may waive, because so long as the government has raised the issue, "it remains a mandatory *statutory* requirement"); *United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440, at *5–10 (D. Or. Apr. 6, 2020) (providing a lengthy discussion of the jurisdictional issue and cases decided in various jurisdictions); *United States v. Allison*, No. CR16-5207RBL, 2020 WL 1904047, at *1 (W.D. Wash. Apr. 17, 2020) (collecting cases); *United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *2 (D. Ariz. Nov. 8, 2019); *United States v. Reid*, No. 17-CR-00175-CRB-1, 2020 WL 1904598, at *3 (N.D. Cal. Apr. 18, 2020); *United States v. Johnson*, No. 2:15-CR-00003-KJM, 2020 WL 2307306, at *3 (E.D. Cal. May 8, 2020); *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).

inmate is to submit a compassionate release request to the warden.  *See also* 28 C.F.R. § 571.61(a) ("A request for a motion under [Section] 3582(c)(1)(A) shall be submitted to the Warden."); 28 C.F.R. §§ 571.60–.64 ("Compassionate Release Procedures for the Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)"). There are then two ways in which an inmate may satisfy the statutory exhaustion requirement.  *First*, if at least 30 days have "lapse[d]" since the inmate submitted his request to the warden and the BOP has failed to respond, then the inmate may file a motion in federal court and the court "may reduce the term of imprisonment."  18 U.S.C. § 3582(c)(1)(A).  This allows the warden a reasonable time to respond to the inmate's request, but it also prevents the warden from denying the inmate relief by simply refusing to respond.  *Second*, if the *warden* denies the request within the 30-day period, the inmate must "fully exhaust[] all administrative rights to appeal."  18 U.S.C. § 3582(c)(1)(A); *see, e.g.*, *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) (noting that Congress did not intend to allow a defendant to "short-circuit the [BOP]'s administrative procedures" by simply "waiting 30 days after filing his request, despite the warden timely acting on that request").[8]  To that end, the inmate must "appeal the denial through the

---

[8]Requiring an inmate to pursue the BOP's appeal process fulfills the two important objectives of administrative exhaustion: (1) "protecting administrative agency authority," especially in matters involving "the agency's discretionary power or . . . its special expertise"; and (2) "promoting judicial efficiency" by affording the agency an "opportunity" to decide the issue, whereby the controversy "may well be mooted," or at the very least, the exhaustion process will "produce a useful record for subsequent judicial consideration."  *See McCarthy*, 503 U.S. at 145.

Administrative Remedy Procedure (28 CFR part 542, subpart B)."   28 C.F.R. § 571.63(a).[9]   That procedure requires the inmate to submit an appeal "on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days," and then appeal the Regional Director's decision by submitting "the appropriate form (BP-11) to the General Counsel within 30 calendar days."   28 C.F.R. § 542.15(a).  Thus, where the "BOP has not had thirty days to consider [the inmate]'s request to move for compassionate release," or within that time period the BOP has issued an adverse decision for the inmate to administratively appeal, the inmate's motion must be dismissed.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).[10]

Here, Kazanowski has satisfied the first option for administrative exhaustion under Section 3582(c)(1)(A).  Assuming that Kazanowski requested compassionate relief from the warden at Pensacola FPC "on or around May 21, 22, or 23, 2020," Dkt. No. 255-1, ¶3, as he asserts through counsel, more than thirty days have since passed, and the BOP has not responded to Kazanowski's request.  *Id*.[11]  When the

---

[9]If an inmate's request is denied "by the General Counsel or Director, Bureau of Prisons," this "constitutes a final administrative decision" and the "inmate may not appeal the denial through the Administrative Remedy Procedure."  28 C.F.R. § 571.63(d).

[10]*See also Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2; *United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440, at *10 (D. Or. Apr. 6, 2020); *United States v. Reid*, No. 17-CR-00175-CRB-1, 2020 WL 1904598, at *4 (N.D. Cal. Apr. 18, 2020); *Weidenhamer*, 2019 WL 6050264, at *4.

[11]Although the Government asserts in its response brief that "an administrative check with BOP indicates that there is no record of a request filed by [Kazanowski]," Dkt. No. 252 at 1, for purposes of this motion, the Court accepts Kazanowski's representation that he submitted a

30-day response period lapses while the inmate's motion is pending in federal court, courts generally agree the exhaustion requirement has been satisfied.[12]  Accordingly, Kazanowski has exhausted his administrative remedies, as required by Section 3582(c)(1)(A).

## II.    Extraordinary and Compelling Reasons

Section 3582(c)(1) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (the "Commission").   Kazanowski has failed to make the requisite showing because he is not suffering from a condition that puts him at a high risk of becoming seriously ill from COVID-19 and, if he did become infected, nothing suggests Kazanowski's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" such that he would "not [be] expected to recover."  *See* U.S.S.G. § 1B1.13 cmt. n.1(A).

---

request for compassionate release to the Warden of FPC Pensacola on either May 21, 22, or 23, 2020.  As Judge Seabright observed, "it would be difficult for [an inmate] to prove at this stage that the [w]arden actually received his request."  *Drummondo-Farias*, 2020 WL 2616119, at *4. This is particularly true for Kazanowski, who was proceeding *pro se* at the time he submitted his request, and it is unlikely he had the wherewithal or perhaps ability to make a copy before doing so.

[12]*See, e.g.*, *Drummondo-Farias*, 2020 WL 2616119, at *4 (Seabright, J.); *United States v. Hinz*, No. 2:12-CR-00294-TLN, 2020 WL 2319924, at *1 (E.D. Cal. May 11, 2020); *United States v. Singui*, No. 212CR00851CAS1, 2020 WL 2523114, at *3 (C.D. Cal. May 18, 2020); *United Johnson*, 2020 WL 2307306, at *4.

### A.      The Commission's Commentary in U.S.S.G. § 1B1.13 Defining "Extraordinary and Compelling" is Binding on Federal Courts

Congress did not delineate the bounds for what constitutes "extraordinary and compelling," except to state that "[r]ehabilitation of the defendant alone" is not enough.   28 U.S.C. § 994(t).   Instead, Congress directed the Commission to promulgate policy statements "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  *Id.*  The Commission did just that under Application Note 1 to U.S.S.G. § 1B1.13, albeit prior to the enactment of the FSA.   The Commission outlined the following four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction:

> (A) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition "that substantially diminishes" the inmate's ability "to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";
>
> (B) the defendant is at least 65 years old, is "experiencing a serious deterioration in physical or mental health because of the aging process," *and* "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less";
>
> (C) family circumstances involving "the death or incapacitation of the caregiver of the defendant's minor child," or the "incapacitation of the defendant's spouse or registered partner," leaving the inmate as "the only available caregiver for the spouse or registered partner"; or
>
> (D) "[a]s determined by the Director of the [BOP]," in the inmate's case there is "an extraordinary and compelling reason other than, or in combination with," the other three reasons described.

*See* U.S.S.G. § 1B1.13 cmt. n.1.

Several district courts have concluded (as Kazanowski urges this Court to do) that because the policy statement is "outdated" and does not account for the fact that an inmate may now seek relief directly from the court,[13] the definition of "extraordinary and compelling" is no longer limited to the examples set forth in the Commission's policy statement above, and courts are free to independently make that determination.[14]  *See* Dkt. No. 255 at 2–3 & n.2.  Having recently rejected this same line of argument, *United States v. Lum*, No. 18-CR-00073-DKW, 2020 WL 3472908, at *3 (D. Haw. June 25, 2020), the Court is not persuaded.

Courts are not at liberty to treat the Commission's commentary as merely "persuasive," "of only limited authority," or "not binding on the federal courts." *Stinson v. United States*, 508 U.S. 36, 39, 44–47 (1993) (citation omitted).  In *Stinson*, the Supreme Court announced "the standard that governs the decision whether particular interpretive or explanatory commentary is binding." *Id.* at 43.  There, the Court explained:

> The Sentencing Commission promulgates the guidelines by virtue of an express congressional delegation of authority for rulemaking, and through the informal rulemaking procedures. Thus, the guidelines are the equivalent of legislative rules adopted by federal agencies.  The

---

[13]The Commission "has not amended the Guidelines following the First Step Act and cannot do so until it again has four voting commissioners." *See, e.g.*, *Brown*, 411 F. Supp. 3d at 449 (citations omitted)).

[14]*Rodriguez*, 424 F. Supp. 3d at 681 (collecting cases); *Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 18, 2020) (collecting cases).

> functional purpose of commentary (of the kind at issue here) is to assist in the interpretation and application of those rules, which are within the Commission's particular area of concern and expertise and which the Commission itself has the first responsibility to formulate and announce. In these respects this type of commentary is akin to an agency's interpretation of its own legislative rules. As we have often stated, provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation."

*Stinson*, 508 U.S. at 44–45 (internal citations omitted) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).   Thus, the Court held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."   *Id.* at 38.[15]

Here, the FSA only amended the *procedural requirements* under Section 3582(c)(1).   *See supra* n.5.   An inmate may now personally petition a court under Section 3582(c)(1).   The mere fact that the Commission has not accounted for this change in U.S.S.G. § 1B1.13 simply means a court must nevertheless entertain a motion from an inmate.   But this does not nullify the Commission's entire policy statement or the commentary defining "extraordinary and compelling," nor does it

---

[15]Although *Stinson* was decided before *United States v. Booker*, 543 U.S. 220, 246 (2005), in which the Supreme Court held that the Guidelines are advisory, not mandatory, the Supreme Court later held in *Dillon* that *Booker* is inapplicable in sentence-modification proceedings under 18 U.S.C. § 3582(c)(2) because such proceedings are fundamentally different, *see Dillon v. United States*, 560 U.S. 817, 828–30 (2010), and, as such, the relevant Guidelines policy statement "constrained" courts.   *See id.* at 825–27.   The same rationale applies to Section 3582(c)(1), the companion statutory provision to the one addressed in *Dillon*.

somehow render that guidance "outdated." *See* 18 U.S.C. § 3553(a)(5) (any "pertinent policy statement" is to be considered "subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into the amendments issued under section 994(p) of title 28."). Indeed, Congress did not alter the meaning of "extraordinary and compelling" in the statute, nor did it revoke the Commission's authority to define that phrase. *See Mistretta v. United States*, 488 U.S. 361, 393–94 (1989) (Congress may "revoke or amend any or all of the Guidelines" by statute "at any time").

Therefore, because Application Note 1 to U.S.S.G. § 1B1.13 does not run afoul of the Constitution or a federal statute, and is not "plainly erroneous or inconsistent" with Section 1B1.13, the Commission's "commentary is a binding interpretation of the phrase '[extraordinary and compelling].'" *Stinson*, 508 U.S. at 47; *see also Dillon*, 560 U.S. at 824 (explaining that a district court's discretion to modify a sentence under Section 3582(c)(2) is "constrained by the Commission's statements").[16]  In so holding, the Court joins the numerous district courts that, for

---

[16]Numerous courts have appropriately turned to *Stinson* and reached the same conclusion. *See, e.g.*, *United States v. Garcia*, No. 4:05-CR-40098, 2020 WL 2039227, at *3–5 (C.D. Ill. Apr. 28, 2020); *United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *3–4 (W.D. Wash. June 10, 2020) (citing nine other decisions); *United States v. Rollins*, No. 99 CR 771-1, 2020 WL 3077593, at *1–2 (N.D. Ill. June 10, 2020) (explaining further that Application Note 1(D) to U.S.S.G. § 1B1.13 is not inconsistent with § 3582(c)(1)(A)(i) because it may still be "applie[d] with full force if the *Director* invokes it in moving for a sentence reduction" and the "fact that Note 1(D) is unavailable if the *defendant* moves for a sentence reduction does not

various reasons, "continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release under § 3582(c)(1)."[17]

### B.    Analysis: Extraordinary and Compelling Reasons

Kazanowski argues that "the growing COVID-19 pandemic . . . in tandem with [his] age, chronic kidney disease, hypertension, depression and anxiety, together present extraordinary and compelling circumstances" that justify reducing his sentence to time served.  Dkt. No. 255 at 4, 13, 15.  In that regard, the only relevant "extraordinary and compelling" scenario identified by the Commission is subpart (A) of the Commission's application note.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A).[18]  The Court concludes, however, that Kazanowski has not shown that such circumstances exist.

Although the Court acknowledges that there is a heightened risk for the virus to spread in correctional facility environments,[19] standing alone, these concerns

---

render it inconsistent with § 3582(c)(1)(A)(i); rather, Note 1(D) is simply inoperative in that circumstance").

[17]*See, e.g.*, *Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020); *Eberhart*, 2020 WL 1450745, at *2; *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020); *United States v. Gross*, No. 2:04-CR-032-RMP, 2019 WL 3538967, at *2 (E.D. Wash. Aug. 2, 2019); *United States v. Shields*, No. 12-CR-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019).

[18]Kazanowski does not contend that the Director of the BOP has determined that there exists in this case some "other" extraordinary or compelling reason for a reduction in sentence.  *See* U.S.S.G. §1B1.13 cmt. n.1(D).

[19]*See generally Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-

about possible exposure to COVID-19 in the abstract are not enough to warrant an inmate's early release. *See, e.g.*, *Raia*, 954 F.3d at 597; *Riley*, 2020 WL 1819838, at *7 (collecting cases). That type of general concern is shared by the public at large, as well as all incarcerated individuals.

Rather, to establish "extraordinary and compelling reasons" stemming from the current coronavirus pandemic, and for such a finding to be consistent with Application Note 1 to U.S.S.G § 1B1.13, an inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n.1(A). Kazanowski falters on elements two and three.

### 1.  The Risk of Becoming Seriously Ill From COVID-19

First, Kazanowski's health conditions do not put him at a high risk of becoming seriously ill if he contracts the virus. As of June 25, 2020, the CDC has stated that individuals at an "increased risk of severe illness from COVID-19"

---

detention/guidance-correctional-detention.html (last visited July 1, 2020).

include people "aged 65 years of and older,"[20] as well people of all ages with the

following underlying health conditions: (i) "Chronic kidney disease"; (ii) "COPD

(chronic obstructive pulmonary disease)"; (iii) "Immunocompromised state

(weakened immune system) from solid organ transplant"; (iv) "Obesity (body mass

index [BMI] of 30 or higher)"; (v) "Serious heart conditions, such as heart failure,

coronary artery disease, or cardiomyopathies"; (vi) "Sickle cell disease"; and "Type

2 diabetes mellitus."[21]

Kazanowski is currently 61 years of age.  He is not obese, based on his BMI

of 27.9, below the CDC's threshold for concern.  The majority of Kazanowski's

other medical conditions are not among those conditions recognized by the CDC

---

[20]*See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness – Older Adults*, CDC (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 30, 2020). The CDC states in broad terms that "[a]s you get older, your risk for severe illness from COVID-19 increases," *i.e.*, "people in their 50s are at higher risk for severe illness than people in their 40s," "people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s," and that the "greatest risk for severe illness from COVID-19 is among those aged 85 or older."  Because the CDC also notes that "8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older," *id.*, for purposes of this motion, the Court will consider age 65 as the threshold for determining whether extraordinary and compelling circumstances exist, insofar as age is concerned, to warrant a sentence reduction.

[21]*See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness – People of Any Age with Underlying Medical Conditions*, CDC (June 25, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 30, 2020).  The CDC also notes that people with the following conditions "*might* be at an increased risk for severe illness from COVID-19": Asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); smoking; thalassemia (a type of blood disorder); Type 1 diabetes mellitus.  *Id.* (emphasis added).

that put an individual at an "increased risk of severe illness from COVID-19."  Not every physical or cognitive condition can be a risk factor if "extraordinary and compelling" is to have any meaning.[22]  That said, Kazanowski's medical records state he has a "mild" case of chronic kidney disease.  Dkt. No. 255-11 at 6, 44.  But for that condition, or, indeed, any of his conditions, to matter, insofar as an "extraordinary and compelling" finding is concerned, the inmate must (at the very least) show that there is a risk of contracting the virus because there are positive COVID-19 cases at the facility where the inmate is housed.  Kazanowski has not done so.

Second, the risk of Kazanowski contracting COVID-19 at Pensacola FPC is, at best, tenuous and speculative.  Kazanowski erroneously relies on coronavirus statistics across all BOP facilities, Florida, and the United States as a whole, Dkt. No. 255 at 4–6, 8.  But this high level of generality says nothing about the state of affairs at FPC Pensacola, where Kazanowski is housed.  Pensacola FPC currently houses a total of 372 inmates.[23]  Coronavirus related data available for BOP facilities is reported on the BOP's public website, which states "the BOP will update the open COVID-19 confirmed positive test numbers, recoveries, and the number of COVID-

---

[22]Contrary to what Kazanowski seems to suggest without any authority, his various conditions—none of which independently qualify as a CDC risk factor—cannot somehow be combined to suddenly transform him into an individual who is at high-risk.  *See* Dkt. No. 255 at 8–12.
[23]*FPC Pensacola*, BOP, https://www.bop.gov/locations/institutions/pen/ (last visited July 1, 2020).

19 related deaths daily at 3:00 p.m.," and because the BOP "has begun additional testing of asymptomatic inmates to assist in slowing transmissions within a correctional setting," the data is expected to reflect an increase in the number of COVID-19 positive tests. [24]   However, as of the date of this Order, there is only one confirmed case of the virus at Pensacola FPC: a staff member.  No cases have been reported among inmates.[25]  Thus, contrary to Kazanowski's contentions, those personnel at Pensacola FPC with the unenviable task of simultaneously maintaining order and preventing the spread of the virus have thus far appeared to be successful in their efforts.  Indeed, statistically, Pensacola FPC is faring better than many cities and counties in Florida, including Escambia, where Pensacola FPC is located.[26]

Kazanowski indicts the BOP's statistics as "unfounded" because "Pensacola FPC has not comprehensively tested its inmates."  Dkt. No. 255 at 5.  It is also true, however, that not all members of the general public have been tested, yet the available numbers on those who have are routinely cited and used by governmental authorities responsible for planning measures designed to curb the virus's spread.  In any event, however, it is the inmate's burden to show that "extraordinary and compelling" circumstances exist.  Here, Kazanowski has offered nothing more than

---

[24]*See COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited July 1, 2020).
[25]*Id.*
[26]*See Cases by County*, CDC (June 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/county-map.html (last visited July 1, 2020) (noting cases per 100,000 residents).

unadorned speculation.  As such, a single positive coronavirus case at a facility—

five months' into the pandemic—hardly justifies an inmate's immediate release.[27]

### 2. Kazanowski's Health Concerns, Even If Later Exacerbated by COVID-19, Can be Managed in a BOP Facility.

Even if a large portion of the Pensacola FPC inmate population were infected

with COVID-19, Kazanowski has not shown that, should *he* contract the virus,

Pensacola FPC is any less equipped to treat him than if he were not incarcerated.

Kazanowski's blanket indictment of the BOP's efforts to curb the spread of the virus

does not change that fact; that is a problem that also exists outside of correctional

facilities.  Dkt. No. 255 at 4–6.  Nonetheless, in collaboration with the CDC and the

World Health Organization (WHO), the BOP has taken extensive efforts to curtail

the spread of the virus; including, *inter alia*, suspending social visits; suspending

inmate transfers; testing inmates who arrive at a BOP facility; suspending legal visits

(with some exceptions); implementing enhanced health screening of staff;

quarantining symptomatic inmates; suspending tours; limiting inmates "in their

movements to prevent congregate gathering and maximize social distancing"; and

completing an inventory of personal protective equipment at all BOP locations with

---

[27]*United States v. Canada*, No. CR 119-014, 2020 WL 2449344 (S.D. Ga. May 12, 2020) (denying diabetic inmate's motion for compassionate release based on COVID-19 concerns, notwithstanding his "greater risk" of experiencing serious complications should he contract the virus, because the inmate's federal facility "only has one active case of COVID-19 in its inmate population").

the BOP continuing to "stockpile."[28]   As such, the BOP's preventive measures are as extensive, if not more, than those implemented in cities and states.  And nothing in the record establishes that Kazanowski is not being properly cared for at Pensacola FPC.  Conditions that can be managed in prison are not a basis for compassionate release.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A).

Accordingly, Kazanowski has not carried his burden of showing that there are "extraordinary and compelling reasons" to justify his early release under 18 U.S.C. § 3582(c)(1).

## III.   Section 3553(a) Factors and Risk of Danger to the Community

Even if extraordinary and compelling reasons supported compassionate release, the Court is not convinced the applicable factors in 18 U.S.C. § 3553(a) weigh in favor of reducing Kazanowski's sentence or authorizing home confinement.  *See* 18 U.S.C. § 3852(c)(1)(A).  Dkt. No. 255 at 13–15.

Upon review of the relevant factors in Section 3553(a), Kazanowski's 120-month sentence is, as it was at sentencing, "sufficient, but not greater than necessary, . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to

---

[28]*See generally BOP Implementing Modified Operations*, BOP, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 30, 2020); *A BOP COVID-19 Overview*, BOP, https://www.bop.gov/coronavirus/overview.jsp#bop_emergency_response (last visited July 1, 2020).

criminal conduct; [and] (C) to protect the public." *See* 18 U.S.C. § 3553(a)(2).  This conclusion is borne out when considering "the nature and circumstances" of Kazanowski's offenses and his "history and characteristics." *Id.* § 3553(a)(1).

Kazanowski was involved in an enterprise that distributed substantial quantities of methamphetamine.  Dkt. No. 149 at 4–6; Dkt. No. 177, ¶¶ 8–27. Kazanowski, however, was fortunate in that he was only sentenced and held accountable for 257.6 grams of "ice."  Dkt. No. 177, ¶¶ 33–34.   The Court imposed the bare mandatory minimum sentence allowable for conspiracy and possession with intent to distribute more than 50 grams of methamphetamine, *i.e.*, 120 months' imprisonment and five years of supervised release.  *See* 21 U.S.C. § 841(b)(1)(A); U.S.S.G. §§ 5G1.1(b), 5B1.1(b)(2); Dkt. No. 177, ¶¶ 89–93; Dkt. Nos. 210, 211. Moreover, the Court was already aware of, and accounted for, the same health concerns Kazanowski now raises.   The only new circumstances cited in Kazanowski's motion (concern about the coronavirus pandemic) do not justify a further reduction in his sentence.  Kazanowski has served approximately 23 months of his 120-month sentence, having not been committed to pretrial detention nor surrendering for his instant detention until early August 2018.   Dkt. No. 230. Releasing him now would undoubtedly result in an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of

similar conduct."[29]  *See* 18 U.S.C. § 3553(a)(6).  Thus, as the Court found on October 25, 2017 when sentencing Kazanowski, the Court concludes today that 120 months' imprisonment is sufficient but not greater than necessary to achieve the statutory purposes of sentencing.

In the end, the lynchpin here is that Kazanowski is not entitled to early release because he poses a "danger to the safety of . . . the community."[30]  Kazanowski's conviction involved a "controlled substance"; the "weight of the evidence" against Kazanowski was undeniable; he has no "family ties," *i.e.*, no children, has never been married, and his parents are deceased; he is a cocaine and alcohol addict; he did not complete high school; has not been employed since 1996; he has no assets or income; and he was homeless for six years leading up to his sentencing.  *See* 18 U.S.C. § 3142(g); Dkt. No. 177 at 16–20.  Kazanowski also has a long criminal history involving violence, public endangerment, and controlled substance-related offenses (*e.g.*, chasing his victims with a machete; disorderly conduct and resisting arrest; battery; driving under the influence; and drug possession).  Dkt. No. 177 at 11–15.  Given the foregoing, the Court finds it inevitable that if released and left to his own devices, Kazanowski will endanger the community in one way or another.

---

[29]Doing so, for instance, would mean that Kazanowski would not even come close to serving the mandatory minimum term of imprisonment for the offense to which he pled guilty.  Dkt. No. 149, ¶ 1; Dkt. No. 177, ¶¶ 89–93.

[30]*See* 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13.

Accordingly, Kazanowski's request for a sentence reduction, Dkt. No. 249, is DENIED.[31]

To the extent Kazanowski seeks an "order that he serve his sentence on home confinement," Dkt. No. 255 at 15, the Court lacks the authority to do so. By its terms, Section 3583(c)(1)(A) only permits a court to "reduce the term of imprisonment." "The [BOP] has the statutory authority to choose the locations where prisoners serve their sentence." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (citing 18 U.S.C. § 3621(b) ("The [BOP] shall designate the place of the prisoner's imprisonment.")); 18 U.S.C. § 3624(c)(2) (establishing the BOP's authority to place an inmate in "home confinement"). Moreover, on March, 26, 2020, U.S. Attorney General William Barr directed the BOP Director to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."[32] The

---

[31]*See, e.g.*, *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *1, *3–4 (D. Idaho Apr. 7, 2020) (denying compassionate release to 70-year-old inmate who was blind in one eye, suffering from atrial fibrillation and stage 4 kidney disease, and had served 146 months of his 240-month sentence (previously reduced from 264 months) for distributing methamphetamine near a school and unlawful possession of a firearm because, if released, he would "pose a danger to the community"); *Singui*, 2020 WL 2523114, at *4–5 (denying diabetic inmate's coronavirus based early release motion because there were "no current reported infections" at the inmate's facility and he "still pose[d] a danger to the community."); *United States v. Hembry*, No. 12-CR-00119-SI-1, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for compassionate release to inmate with diabetes based on COVID-19 risks because the inmate was "housed at a facility with no reported infections" and he still "pose[d] a danger to the community").
[32]Memorandum from Attorney Gen. to Director of Bureau of Prisons, *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), https://www.justice.gov/file/1262731/download.

following day, Congress granted the BOP Director the authority to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under . . . [18 U.S.C. Section] 3624(c)(2)]," so long as "the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau." *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 515–17 (2020). In response, "the BOP began immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC, to determine which inmates are suitable for home confinement. Since the release of the Attorney General's original memo to the Bureau of Prisons . . . instructing [the BOP] to prioritize home confinement as an appropriate response to the COVID-19 pandemic, the BOP has placed an additional 4,552 inmates on home confinement; an increase of 160 percent."[33] Of course, a sentencing court may make a "non-binding" recommendation to the BOP regarding where an inmate's sentence should be served. *Ceballos*, 671 F.3d at 855 (citing 18 U.S.C. § 3621(b)). As a discretionary matter, however, the Court declines to make a recommendation to the BOP concerning home confinement, particularly given the danger Kazanowski poses to the community; his vague plan upon release

---

[33]*COVID-19 Coronavirus: COVID-19 Home Confinement Information*, BOP, https://www.bop.gov/coronavirus/ (last visited June 30, 2020).

to reside "with a friend in Honolulu," Dkt. No. 255-1 at 2; Dkt. No. 255 at 15; and

that the BOP is swiftly fulfilling its statutory role during the coronavirus pandemic.

## CONCLUSION

For the reasons set forth herein, Kazanowski's motion for compassionate

release, Dkt. No. 249, is DENIED.

IT IS SO ORDERED.

DATED: July 1, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

United States of America vs. Carl Kazanowski; Cr 15-00459 DKW-5; **ORDER DENYING DEFENDANT'S EMERGENCY REQUEST FOR A SENTENCE REDUCTION**